# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |
|---|---|
| A.E. PETSCHE CO., INC., a Texas corporation, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. : 2:12-cv-919 |
| JKM MANUFACTURING, INC., an Alabama corporation; ROBERT J. THEUNE, an individual; and CHAD B. WHITE, an individual, | |
| Defendants. | |

## COMPLAINT

Plaintiff A.E. Petsche Co., Inc. ("AEP") hereby complains against Defendants JKM Manufacturing, Inc. ("JKM"), Robert J. Theune ("Mr. Theune"), and Chad B. White ("Mr. White"), and for its causes of action alleges as follows:

### PARTIES

1.      AEP is incorporated under the laws of the state of Texas, and has its principal place of business in Tarrant County, Texas, and is therefore a citizen of the state of Texas.

1

2.     JKM is incorporated under the laws of the state of Alabama, and has its principal place of business in Barbour County, Alabama, and is therefore a citizen of the state of Alabama.

3.     On information and belief, Mr. Theune resides in Houston County, Alabama, and is therefore a citizen of the state of Alabama. On information and belief, Mr. Theune is, or was during the relevant time period, a principal shareholder of JKM.

4.     On information and belief, Mr. White currently resides in Fulton County, Georgia, and is therefore a citizen of the state of Georgia. On information and belief, Mr. White is the Chief Executive Officer ("CEO") of JKM, and is, or was during the relevant time period, the Chairman of JKM's Board of Directors.

## JURISDICTION AND VENUE

5.     The Court has federal diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and (c) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and because no defendant is a citizen of the same state as the plaintiff.

6.     The Court has personal jurisdiction over JKM and Mr. Theune, because they reside in and are citizens of the state of Alabama.

7.     The Court has personal jurisdiction over Mr. White because although he is currently a citizen of the state of Georgia, he has committed acts within

2

Alabama and this judicial district giving rise to this action and has established minimum contacts with the forum such that the exercise of jurisdiction over him would not offend traditional notions of fair play and substantial justice.

8.     Specifically, Mr. White is the CEO of JKM (which is incorporated under the laws of and has its principal place of business in Alabama); he operated and carried on the business of JKM in Alabama; he visited Alabama several times to transact business on behalf of JKM; he executed (on behalf of himself and JKM) certain of the pertinent contracts that were to be performed, in part, in Alabama; and he was otherwise personally involved in the transactions giving rise to this action. Indeed, Mr. White engaged in substantial and not isolated activity within the state of Alabama, subjecting him to the general jurisdiction of the courts of the state of Alabama, whether or not the claims at issue arise from that activity.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and/or (3), because a substantial part of the events giving rise to AEP's claims against Defendants occurred in this judicial district, and/or because JKM is subject to the Court's personal jurisdiction with respect to this action in this judicial district.

10.     All conditions precedent to this action have been performed, have occurred, or have been waived.

3

## FACTUAL BACKGROUND

11.    AEP is a leading supplier of high-performance interconnect products and related services.

12.    JKM is a wiring harness manufacturer and makes products for the defense, communications, and aerospace industries.

13.    Beginning prior to March 2007, JKM began ordering from AEP, and AEP began supplying to JKM on credit, various types of products, which JKM incorporated into its products and sold to its customers.

14.    On or about March 12, 2007, in order to induce AEP to extend its open credit line from $50,000, and in order to secure the due payment of the indebtedness of JKM to AEP above $50,000, Mr. White and Mr. Theune each executed a Personal Guaranty (together, the "Personal Guarantees"). (*See* Ex. A, Personal Guarantees.) Mr. White represented in his Personal Guaranty that he was the "Chairman of the [B]oard" of JKM. (*Id.*) Mr. Theune represented in his Personal Guaranty that he was a "50%" owner of JKM. (*Id.*)

15.    The Personal Guarantees provide, in part, as follows:

> I, [Robert J. Theune/Chad B. White] . . . for and in consideration of the A.E. Petsche Co., Inc., extending its open credit line from $50,000 at my request to JKM Manufacturing, Inc., (herein after referred to as the "Company") . . . hereby personally guarantee to you the payment of any obligation of the Company above $50,000 to A.E. Petsche Co., Inc. I hereby agree to bind myself and my heirs to pay the A.E. Petsche Co., Inc. on

4

> demand any sum which may become due to you by the Company whenever the Company shall fail to pay the same.
>
> I understood that this guaranty shall be a continuing and irrevocable guaranty and indemnity for such indebtedness of [t]he Company.
>
> It is agreed that revocation of this guaranty may only be made in writing. Such revocation may not be made retroactive. Notice must be in the form of a registered letter delivered to and signed by an officer of this Company. Termination of this guaranty shall be effective upon receipt of such notification.

(*Id.*)

16.   At the time the parties entered into the Personal Guarantees, AEP's Corporate Credit Manager discussed a consignment arrangement with Mr. Theune and Mr. White, whereby AEP would supply product to JKM on a consignment basis.

17.   On October 1, 2009, AEP and JKM entered into a Consignment Inventory Agreement, pursuant to which the parties agreed that AEP would supply product to JKM on a consignment basis. (*See* Ex. B, Consignment Inventory Agreement.)

18.   The Consignment Inventory Agreement was signed by Mr. White, on behalf of JKM, in his capacity of "CEO." (*Id.* at 5.)

19.   The Consignment Inventory Agreement provides that "[i]n the event [AEP] is required to take legal action to collect unpaid amounts, and [AEP] is

successful in such action, Buyer JKM will reimburse all costs and reasonable attorneys' fees incurred by [AEP] in such action." (*Id.* at 2.)

20. JKM also granted AEP a broad security interest in its assets. AEP's security interest is evidenced by and subject to the terms of a Security Agreement. (*See* Ex. C, Security Agreement.) The Security Agreement was "accepted" and signed on behalf of JKM by Mr. White, "at Eufaula, Al[abama], this 13th day of November, 2009." (*Id.* at 3.)

21. Thereafter, JKM ordered from AEP, both under the Consignment Inventory Agreement and non-consignment purchase orders, numerous products, which AEP delivered to JKM on credit, and which JKM incorporated into or used to repair its products, which products were subsequently sold to JKM's customers. AEP invoiced JKM for each of its purchases.

22. AEP's invoices state that orders were "sent subject to [AEP's] standard terms and conditions [the "Terms and Conditions"], a copy of which is located at www.aepetsche.com or upon request." (Ex. D, representative invoice.)

23. The Terms and Conditions state that "any past due balance will accrue interest at the monthly rate of one and one-half percent." (Ex. E, Terms and Conditions ¶ 1.) The Terms and Conditions further provide that "[JMK] is responsible for all costs and expenses incurred by [AEP] in collecting any sums owed by [JMK] (which may include, but are not limited to, collection agency and

6

reasonable attorneys' fees)." (*Id.* ¶ 4.) Finally, the Terms and Conditions provide that all transactions will be governed by the laws of the state of New York, and that the parties "waive any right to trial by jury." (*Id.*)

24. JKM accepted the products delivered by AEP under the Consignment Inventory Agreement and non-consignment purchase orders, and therefore agreed to the invoices and Terms and Conditions.

25. Although the products at issue were shipped by AEP to JKM (at JKM's request and pursuant to JKM's purchase orders), and although JKM accepted and consumed the products, JKM has since failed and/or refused to pay for them in breach of the applicable invoices, the Terms and Conditions, and the Consignment Inventory Agreement.

26. JKM currently owes AEP the principal amount of $707,990.92 for product shipped under the Consignment Inventory Agreement and non-consignment purchase orders and invoices. (*See* Ex. F, account statement.)

27. AEP has demanded that JKM pay its indebtedness to AEP, which is due and owing, but JKM has failed or refused to do so.

28. Neither Mr. White nor Mr. Theune made any attempt to revoke the Personal Guarantees before JKM incurred the above indebtedness to AEP, and therefore they are each obligated to pay the indebtedness of JKM to AEP above $50,000 (*i.e.*, $657,990.92).

7

29.     AEP has demanded that Mr. White and Mr. Theune pay JKM's indebtedness to AEP above $50,000, which is due and owing, but they have each failed or refused to do so in material breach of the Personal Guarantees.

## FIRST CAUSE OF ACTION
### (Breach of Contract—Consignment Inventory Agreement)
### (Against JKM)

30.     AEP hereby incorporates and realleges paragraphs 1 through 29 of the Complaint as though fully set forth herein.

31.     The Consignment Inventory Agreement is a legally enforceable contract between AEP and JKM.

32.     JKM has failed or refused to perform its obligations under the Consignment Inventory Agreement, including, but not limited to, paying the amounts due under the Agreement, and has therefore materially breached the Agreement.

33.     Under the Consignment Inventory Agreement, JKM is liable to AEP for the attorneys' fees and costs incurred by AEP in enforcing its rights under the Agreement.

34.     AEP has discharged any condition precedent to JKM's obligation to perform its obligations under the Consignment Inventory Agreement.

8

35.     As a direct and proximate result of JKM's breach of the Consignment Inventory Agreement, AEP has suffered, and will continue to suffer, damages in an amount to be proven at trial, but not less than $402,701.04.

36.     Wherefore, AEP demands judgment against JKM in the principal amount of $402,701.04, plus pre- and post-judgment interest, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Breach of Contract—Consignment Agreement Invoices)
### (Against JKM)

37.     In the event JKM denies the existence or enforceability of the Consignment Inventory Agreement, AEP pleads and claims in the alternative as follows:

38.     AEP hereby incorporates and realleges paragraphs 1 through 37 of the Complaint as though fully set forth herein.

39.     JKM accepted the products delivered by AEP under the consignment agreement invoices and therefore agreed to be bound by such invoices and the Terms and Conditions.

40.     AEP has discharged any condition precedent to JKM's obligation to pay the consignment agreement invoice amounts.

41.     JKM has failed or refused to pay the amounts owing under the consignment agreement invoices as they have become due.  JKM's failure to pay

9

the amounts owing under the consignment agreement invoices constitutes a material breach of contract.

42. Under the consignment agreement invoices and the Terms and Conditions, JKM is liable to AEP for the attorneys' fees and costs incurred by AEP in enforcing its rights under the consignment agreement invoices.

43. As a direct and proximate result of JKM's breach of the consignment agreement invoices, AEP has suffered, and will continue to suffer, damages in an amount to be proven at trial, but not less than $402,701.04.

44. Wherefore, AEP demands judgment against JKM in the principal amount of $402,701.04 under the consignment agreement invoices, plus pre- and post-judgment interest, costs, and attorneys' fees.

## THIRD CAUSE OF ACTION
### (Breach of Contract—Non-Consignment Agreement Invoices)
### (Against JKM)

45. AEP hereby incorporates and realleges paragraphs 1 through 44 of the Complaint as though fully set forth herein.

46. In addition to ordering and accepting product from AEP under the Consignment Inventory Agreement, JKM also ordered and accepted products from AEP under non-consignment agreement invoices, and therefore agreed to be bound by such invoices and the Terms and Conditions.

10

47.     AEP has discharged any condition precedent to JKM's obligation to pay the non-consignment agreement invoice amounts.

48.     JKM has failed or refused to pay the amounts owing under the non-consignment agreement invoices as they have become due. JKM's failure to pay the amounts owing under the non-consignment agreement invoices constitutes a material breach of contract.

49.     Under the non-consignment agreement invoices and the Terms and Conditions, JKM is liable to AEP for the attorneys' fees and costs incurred by AEP in enforcing its rights under the non-consignment agreement invoices.

50.     As a direct and proximate result of JKM's breach of the non-consignment agreement invoices, AEP has suffered, and will continue to suffer, damages in an amount to be proven at trial, but not less than $305,289.88.

51.     Wherefore, AEP demands judgment against JKM in the principal amount of $305,289.88 under the non-consignment agreement invoices, plus pre- and post-judgment interest, costs, and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**(Against JKM)**

52.     In the event JKM denies the existence or enforceability of the Consignment Inventory Agreement and/or the invoices, AEP pleads and claims in the alternative as follows:

11

53.    AEP incorporates and realleges paragraphs 1 through 52 of the Complaint as though fully set forth herein.

54.    AEP obtained and supplied products for JKM with a good faith belief that it would be paid for the products.

55.    JKM knew that it was receiving products supplied by AEP, that AEP was obtaining other products on JKM's behalf, and that AEP reasonably expected to be paid for the products.

56.    Despite demand by AEP, JKM has failed to pay the amounts due AEP.

57.    Under the circumstances, JKM is obligated to pay the reasonable value of the products AEP obtained and supplied for JKM.

58.    As a direct and proximate result of JKM's failure to pay for the products, AEP has suffered damages in an amount not less than $707,990.92.

59.    Wherefore, AEP demands judgment against JKM in the amount of $707,990.92, plus pre- and post-judgment interest, costs, and attorneys' fees.

## FIFTH CAUSE OF ACTION
### (Account Stated)
### (Against JKM)

60.    In the event JKM denies the existence or enforceability of the Consignment Inventory Agreement and/or the invoices, AEP pleads and claims in the alternative as follows:

12

61.    AEP incorporates and realleges paragraphs 1 through 60 of the Complaint as though fully set forth herein.

62.    During the course of the parties' relationship, JKM ordered from AEP various products on credit.

63.    JKM has made partial payment on its account with AEP. Its partial payments constitute an acknowledgment of the validity of its indebtedness to AEP on the account.

64.    Despite demand by AEP, JKM has failed to pay the balance of the account, which is immediately due and owing.

65.    As a direct and proximate result of JKM's failure to pay the balance due on the account, AEP has suffered damages in the amount of $707,990.92.

66.    Wherefore, AEP demands judgment against JKM in the sum of $707,990.92, plus pre- and post-judgment interest, costs, and attorneys' fees.

### SIXTH CAUSE OF ACTION
### (Promissory Estoppel)
### (Against JKM)

67.    In the event JKM denies the existence or enforceability of the Consignment Inventory Agreement and/or the invoices, AEP pleads and claims in the alternative as follows:

68.    AEP incorporates and realleges paragraphs 1 through 67 of the Complaint as though fully set forth herein.

13

69.   JKM represented and promised, by agreement and by course of conduct, that it would purchase products from AEP.

70.   AEP reasonably and foreseeably relied on JKM's representations and actions. In turn, AEP proceeded to deliver certain products to JKM, the reasonable value of which is an amount that is not less than $707,990.92.

71.   JKM foresaw, or reasonably should have foreseen, that AEP would act in reliance on its representations and actions.

72.   JKM's refusal to honor its promises and commitments has caused, and will continue to cause, AEP to suffer general and consequential damages in an amount not less than $707,990.92.

73.   Wherefore, AEP demands judgment against JKM in the sum of $707,990.92, plus pre- and post-judgment interest, costs, and attorneys' fees.

74.   Additionally, JKM should be estopped from denying that it agreed to pay for the products pursuant to the terms of the Consignment Inventory Agreement and the invoices.

## SEVENTH CAUSE OF ACTION
### (Writ of Replevin and Lien Foreclosure)
### (Against JKM)

75.   AEP incorporates and realleges paragraphs 1 through 74 of the Complaint as though fully set forth herein.

14

76.    AEP has a security interest in the collateral securing JKM's obligation to pay the amounts owing under the Consignment Inventory Agreement and non-consignment agreement invoices.

77.    JKM is in breach and default of its obligation to pay the amounts owing to AEP.

78.    Under the Security Agreement, as well as under applicable state law, AEP is entitled to take possession of the collateral due to JKM's default.

79.    AEP is, therefore, entitled to the issuance of a writ of replevin requiring the sheriff or constable to forthwith take possession of the collateral and deliver it to AEP.

80.    Under the Security Agreement, as well as under applicable state law, AEP is thereafter entitled to sell or otherwise dispose of the collateral.

81.    AEP is further entitled to recover from JKM the attorneys' fees, legal expenses, and other costs it has incurred, and will continue to incur, in this action.

## EIGHTH CAUSE OF ACTION
### (Breach of Personal Guaranty)
### (Against Mr. White and Mr. Theune)

82.    AEP incorporates and realleges paragraphs 1 through 81 of the Complaint as though fully set forth herein.

83.    As alleged above, JKM has defaulted on and breached the Consignment Inventory Agreement and the non-consignment agreement invoices

15

by failing and/or refusing to timely pay for the products it ordered and accepted from JKM.

84.   Pursuant to the Personal Guarantees, Mr. White and Mr. Theune each guaranteed JKM's indebtedness due to AEP above $50,000. Thus, Mr. White and Mr. Theune are each liable to AEP in the amount of $657,990.92.

85.   Mr. White and Mr. Theune, however, have each failed and/or refused to pay the indebtedness of JKM to AEP above $50,000, and are therefore in breach and default of the Personal Guarantees.

86.   AEP has discharged any condition precedent to Mr. White's and Mr. Theune's personal obligation to pay the indebtedness of JKM to AEP above $50,000.

87.   As a direct and proximate result of Mr. White's and Mr. Theune's failure to pay their personal obligation pursuant to the Personal Guarantees, AEP has been damaged in the amount of not less than $657,990.92, plus pre- and post-judgment interest, costs, and attorneys' fees.

### NINTH CAUSE OF ACTION
### (Promissory Estoppel)
### (Against Mr. White and Mr. Theune)

88.   In the event Mr. White and Mr. Theune deny the existence or enforceability of the Personal Guarantees, AEP pleads and claims in the alternative as follows:

16

89.    AEP incorporates and realleges paragraphs 1 through 88 of the Complaint as though fully set forth herein.

90.    Mr. White and Mr. Theune each represented and promised, by agreement and by course of conduct, that they would personally guarantee the payment of JKM's indebtedness to AEP above $50,000.

91.    AEP reasonably and foreseeably relied on Mr. White's and Mr. Theune's representations and actions.  In turn, AEP extended its open credit line to JKM above $50,000, and proceeded to deliver certain products to JKM, the reasonable value of which is an amount that is not less than $707,990.92.

92.    Neither Mr. White nor Mr. Theune made any attempt to revoke the Personal Guarantees before JKM incurred the above indebtedness to AEP.

93.    Thus Mr. White and Mr. Theune each foresaw, or reasonably should have foreseen, that AEP would act in reliance on their representations and actions.

94.    Mr. White's and Mr. Theune's refusal to honor their promises and commitments has caused, and will continue to cause, AEP to suffer general and consequential damages in an amount not less than $657,990.92.

95.    Wherefore, AEP demands judgment against Mr. White and Mr. Theune in the sum of $657,990.92, plus pre- and post-judgment interest, costs, and attorneys' fees.

17

96.     Additionally, Mr. White and Mr. Theune should be estopped from denying that they agreed to pay for the indebtedness of JKM to AEP above $50,000.

## PRAYER FOR RELIEF

WHEREFORE, AEP respectfully prays that this Court enter judgment against JKM in the following manner:

1.      Under the First Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $402,701.04, plus pre- and post-judgment interest.

2.      Under the Second Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $402,701.04, plus pre- and post-judgment interest.

3.      Under the Third Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $305,289.88, plus pre- and post-judgment interest.

4.      Under the Fourth Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $707,990.92, plus pre- and post-judgment interest.

18

5.      Under the Fifth Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $707,990.92, plus pre- and post-judgment interest.

6.      Under the Sixth Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $707,990.92, plus pre- and post-judgment interest.

7.      Under the Seventh Cause of Action, (a) judgment against JKM in the amount of $707,990.92, plus pre- and post-judgment interest, costs, and attorneys' fees; (b) a Writ of Replevin for possession of the collateral; and (c) an order directing the disposition of the collateral pursuant to state law.

8.      Under the Eighth Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $657,990.92, plus pre- and post-judgment interest.

9.      Under the Ninth Cause of Action, for general compensatory and consequential damages in an amount subject to proof at trial, but not less than $657,990.92, plus pre- and post-judgment interest.

10.     For attorneys' fees and costs incurred by AEP in prosecuting this action.

11.     For such other and further relief as the Court deems just and proper.

19

Respectfully submitted this 19th day of October, 2012.

One of the Attorneys for Plaintiff,
A.E. Petsche Co., Inc.

**OF COUNSEL:**

William P. "Pete" Cobb, II
BALCH & BINGHAM LLP
105 Tallapoosa Street, Suite 200
Montgomery, Alabama 36104-2549
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Thomas R. DeBray, Jr.
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

Justin B. Palmer (Utah Bar No. 8937)
Stoel Rives LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111

20

**SERVICE TO BE MADE ON DEFENDANTS VIA:**

**By Certified Mail:**

JKM Manufacturing, Inc.
James Martin—Registered Agent
135 Oaks Landing
Eufaula, Alabama 36027

Mr. Robert J. Theune
*c/o* Mr. Daniel F. Johnson, Esq.
Lewis, Brackin, Flowers & Johnson
265 West Main Street
Dothan, Alabama 36301

**By Hand Delivery:**

Mr. Chad B. White
Brauer Capital, LLC
2970 Peachtree Road NW, Suite 320
Atlanta, Georgia 30305